STATE of Minnesota, Respondent,

v.

Robert Carl SEEFELDT, Appellant.

No. 49746.

Supreme Court of Minnesota.

May 2, 1980.

C. Paul Jones, Public Defender, and Robert D. Goodell, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and John H. Daniels, Jr., Sp. Asst. Atty. Gen., St. Paul, Jerome A. Schreiber, County Atty., Lake City, for respondent.

ROGOSHESKE, Justice.

Defendant, found guilty by a district court jury of assault with a dangerous weapon, Minn.Stat. § 609.225, subd. 2 (1978), and sentenced by the trial court to a maximum prison term of 5 years, appeals from the judgment of conviction. He contends that (1) the trial court erroneously denied a motion to suppress identification testimony which was the fruit of an unlawful misdemeanor arrest, (2) he was prejudiced by the brief presence in the courtroom of a jacket which the court first had refused to suppress but later ordered suppressed as having been illegally seized, (3) the trial court prejudicially erred in admitting testimony concerning the pretrial identification of defendant by the victim and another witness as well as a book of police photographs in which they selected defendant's photograph, and (4) the evidence was legally insufficient to establish that defendant used a dangerous weapon in the assault. We affirm.

The offense occurred on the evening of March 8, 1978, in Plainview, when an assailant grabbed a young girl from behind, poked her neck with an unidentified sharp pointed object, and asked her embarrassing personal questions. The assailant abandoned the assault and escaped apparently after he became aware that two high school boys driving by in a car had observed him as he was assaulting the girl.

Nearly 2 weeks later, on March 21, 1978, Wabasha County sheriff's deputies received two reports, one from Winona authorities which indicated that defendant may have been involved in harassing women at a Winona shopping center, another from Wabasha police revealing that they had probable cause to believe that defendant had harassed a young woman there. Thereafter they stopped defendant and took him to the sheriff's office for questioning. A deputy at the sheriff's office, Joe Kaupa, had heard the information about defendant's possible involvement in the Winona and Wabasha incidents and realized for the first time that defendant, whom he personally knew, fit the description of the assailant in the Plainview felony occurring on March 8 and that he had recently seen defendant wearing a jacket like the one worn by the assailant. Kaupa asked defendant about the Plainview incident as well as the Winona and Wabasha incidents and obtained a statement. He also seized defendant's jacket and placed defendant's booking photograph in a book of police photographs which he showed the victim of the Plainview assault and the two boys who witnessed part of the assault. The victim and one of the boys positively selected defendant's photograph from over 100 photographs.

At the omnibus hearing defendant moved to suppress the statement, the jacket, and all the identification testimony on the ground that they were the fruit of an unlawful arrest. The prosecutor was unable to prove that the arresting officer had probable cause to connect defendant with any

felony and while the evidence showed that the officer had probable cause to arrest defendant for a misdemeanor assault committed in Wabasha, that assault had not occurred in the presence of the arresting officer. Accordingly, it appeared that the arrest, while not an unconstitutional arrest not based on probable cause, was illegal under Minnesota law. The district court suppressed the statement but not the jacket or the identification testimony. Later, after the prosecutor had brought the jacket into the courtroom, the court reversed itself and ordered it suppressed also.

At trial both the victim and one of the boys positively identified defendant, and the trial court admitted testimony about their pretrial photographic identification of the defendant as well as the police photographs which they viewed.

1. Defendant's first contention is that the trial court erred by refusing to suppress the identification testimony. We need not decide the broad issue of the general applicability of the fourth amendment exclusionary rule to evidence obtained as a result of a constitutional warrantless misdemeanor arrest which is illegal because of our state's requirement that the offense be committed in the arresting officer's presence, since the evidence in question was properly admitted even assuming that the exclusionary rule applies. *State v. Bale*, 267 N.W.2d 730 (Minn.1978); *see* 1 LaFave, *Search and Seizure*, § 1.3 (1978). The test used in applying the exclusionary rule in a specific case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Many factors bear on the application of this test, including the temporal proximity of the illegality and the fruit of the illegality, the

presence of intervening circumstances, the purpose and flagrancy of the misconduct, the likelihood that the evidence would have been discovered by legal means, and, in the case of a live witness, whether the exclusion would perpetually disable a knowledgeable witness from testifying at trial. *See United States v. Crews*, —— U.S. ——, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 386 (1978); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Kaupa, the deputy who interviewed defendant, connected defendant to the March 8 Plainview crime after he heard the dispatch about defendant on March 21 but before defendant arrived at the station to be interviewed about the Winona and Wabasha incidents. Thus, even if defendant had not been arrested and brought in for questioning, Kaupa had made the connection and presumably would have gone ahead and investigated defendant's possible role in the incident with which we are concerned. Rather than use a booking photograph, he could have stationed himself in his car and taken a picture of defendant as defendant left his house [1] and then shown this picture, along with others, to the witnesses.

■ There are a number of other possible approaches which we have considered and some of these, if followed, would lead to the conclusion that the trial court also should not have suppressed the statement and the jacket. However, the case is presented to us in such a way that we need decide only the issue of the constitutional admissibility of the identification testimony, and we readily conclude that the trial court did not constitutionally err in admitting that testimony.

■ 2. Defendant's second contention is that he was prejudiced by the brief presence in the courtroom of the jacket, which

1. As the United States Supreme Court noted in *United States v. Dionisio*, 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973), a person's facial characteristics are "constantly exposed to the public" and therefore it seems obvious

that merely taking a person's picture does not constitute a search. *See United States v. Holland*, 438 F.2d 887 (6th Cir. 1971) (not a search to photograph a person who voluntarily came to police station).

the court first had refused to suppress but, later ordered suppressed as having been illegally seized. We do not decide whether the exclusion of the jacket was constitutionally required because, even assuming that it was and that the jury saw the jacket and connected it with defendant, we do not believe that a reversal on this ground is required. The prosecutor's act of bringing the jacket into the courtroom was based on his good faith belief that the evidence was admissible, since the trial court had denied the motion to suppress it. Defendant did not move for a mistrial; significantly, if the prosecutor had known earlier that the jacket was not going to be admitted, he presumably would have made a decision to elicit the testimony that deputy Kaupa had observed defendant some time before March 21 wearing a jacket which fit the description of the jacket worn by the assailant. Considering all the factors, including the strength of the evidence of defendant's identification as the assailant, we conclude that defendant was not prejudiced by what happened.

■ 3. Defendant's third contention is that the trial court prejudicially erred in admitting testimony concerning the pretrial identification of defendant by the victim and one of the other witnesses as well as the book of police photographs from which they selected defendant's photograph. The main reason for excluding police photographs generally is that they might suggest to the jury that defendant has been involved in prior criminal conduct although they do not always do so. However, it may be proper for the trial court to admit such photographs, if the probative value of the evidence is substantially outweighed by its potential for unfair prejudice. Minn.R. Evid. 403.

In *State v. Lee*, 266 N.W.2d 181 (Minn. 1978), the defendant claimed, among other things, that the prosecutor had improperly informed the jury in his opening statement that the state's key witness had picked defendant's photograph from about 1,000 pictures and later introduced evidence to that effect. In holding that this was not error, this court stated as follows:

Defendant contends that this information suggested to the jury that defendant was involved in prior criminal conduct. It is true that when a defendant is initially identified from photographs at the police station, the jury may infer that he has at least a prior arrest record. The only evidence in this case connecting defendant to the crime, however, was the eyewitness identification testimony. If the state had not been permitted to show the manner in which defendant was originally identified, it is quite possible that the jury would not have credited the identification testimony. Further, we think it is significant that the prosecutor tried to neutralize the prejudice by calling an officer from the identification unit who in the course of his testimony revealed that the unit took pictures not just of people who were arrested but also of people seeking licenses and permits. Under all the circumstances, we hold that there was no error.

266 N.W.2d at 182.

In *State v. Serna*, 290 N.W.2d 446 (Minn. 1980), the issue was whether the trial court prejudicially erred in admitting police booking photographs, including one of defendant, which were shown to the witness the day after defendant was arrested. Our opinion made it clear that while it was risky for the prosecutor to offer the evidence and for the trial court to admit it, since there was no real identification issue, the picture did not necessarily suggest that defendant had a prior criminal record because the jury was informed that the picture of defendant was taken the day after defendant was arrested for the charge on which he was standing trial.

■ In the instant case defense counsel's objection to evidence relating to the identification of defendant and to the admission of the police photographs was based on fourth amendment grounds, not on the ground that the testimony and the evidence might suggest to the jury that defendant had a prior criminal record. In any event, as in the *Serna* case, the jury was informed

that the photograph of defendant was taken after the offense and the implication was that the picture was taken at the time defendant was booked for the present offense. As in the *Lee* case, the issue of identity was contested at trial and the fact that defendant was identified by the victim and by one of the other witnesses from a book of over 100 photographs was highly probative on this issue. Under these circumstances, we conclude that the trial court did not err in admitting the testimony or the photographs.

■ 4. Defendant's final contention is that the evidence that he used a dangerous weapon was legally insufficient. While the victim did not actually see the weapon used, she testified that it was sharp and pointed like a knife and she believed that it was a knife. The pictures of the victim's minor wounds support the conclusion that a knife was used. In summary, we believe that the nature of the weapon used was inferable from the evidence. *See generally* 6A C.J.S. *Assault and Battery* § 123(b) (1975).

Affirmed.