**STATE of Minnesota, Respondent,**

v.

**Anthony DENT, Appellant.**

**No. 51315.**

Supreme Court of Minnesota.

July 24, 1981.

---

2. *See* Minnesota Sentencing Guidelines, Statement of Purpose and Principles.

488

C. Paul Jones, Public Defender, and Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Mi-

chael McGlennen, Asst. County Attys., Thomas A. Weist, Anne E. Peek, Law Clerk and Robert Lynn, Asst. County Atty., Minneapolis, for respondent.

SHERAN, Chief Justice.

Defendant was found guilty by a district court jury of first-degree murder and was sentenced by the trial court to a mandatory term of life imprisonment. On appeal from the judgment of conviction, defendant contends that the evidence of his guilt was insufficient and raises a number of issues relating to the admissibility of certain evidence concerning the adequacy of the instructions. We affirm.

The victim in this case was a Mexican man named Ramon Sanchez, about whom little is known other than that in mid-June 1979, he, along with a number of Puerto Ricans and other Mexicans, came to Minneapolis from Chicago to work for a local contract cleaning company. Sanchez and his co-workers were housed in an apartment on the corner of Franklin Avenue and Third Avenue South in Minneapolis. On the afternoon of June 30, 1979, when Sanchez was at work in a Bloomington hotel, several of the others, apparently Puerto Ricans, were involved in an incident which resulted in the stabbing of a black man from the neighborhood of the apartment building.

Later that day defendant, who is black, along with two black friends talked with a number of white neighborhood residents about the Puerto Ricans, who defendant claimed were monopolizing the neighborhood. Sometime around dusk defendant apparently armed himself with a revolver from his car and, after making threats to kill "one of them," spotted Sanchez, who by then was through with work and had returned to the neighborhood. Although the others told defendant that Sanchez had not been involved in the stabbing incident, defendant walked up to him, displayed the gun and began castigating Sanchez, who did not understand English and apparently did not respond. After firing one shot

downward, defendant pointed the gun at Sanchez and, as Sanchez turned, shot him in the back at fairly close range, killing him. Defendant then calmly walked back to the gathering of people, blew on his gun, put it in his pants, said that he killed the "s.o.b." and that that would teach "them" a lesson. Defendant was arrested less than a month later in St. Louis, to which he had fled.

██ 1. Defendant's first contention is that the evidence was legally insufficient to establish that he was the one who shot Sanchez and that he did so with premeditation and intent to kill.

There is no merit to this contention. There were more than five witnesses who saw defendant shoot Sanchez, although the state could not locate some of these witnesses when it came time for trial. However, five people testified that they saw defendant shoot Sanchez, and there was evidence that defendant admitted to four of these people right afterwards that he had done so. The only real dispute was whether the killing was premeditated and there was strong evidence of that also. Defendant implied that he would handle the matter as early as 5:30 in the afternoon when he talked to one of the neighborhood residents and in the minutes before the shooting he became more explicit. He then armed himself, spotted Sanchez, and, without provocation, walked up to him and killed him. In summary, this clearly was a premeditated deliberate murder. *State v. Linder*, 304 N.W.2d 902 (Minn.1981).

2. Defendant's next contention is that he was prejudiced by the prosecutor's unintentional elicitation of testimony from a police officer that the photograph of defendant which was included in the photographic display was a photograph from the "police files."

Defendant's attorney apparently did not object to this immediately because he did not want to draw the jury's attention to it. However, he did raise the matter a short time later, when he objected to the admission of the pictures used in the display. When the trial court stated that it was

going to admit the pictures, since identification was apparently going to be an issue, defense counsel argued that the combined effect of the pictures and the unobjected to statement would be to imply to the jury that defendant had a prior record and that that would be prejudicial. After reconsideration, the trial court changed its ruling and refused to admit the pictures but said that it would readmit the evidence if the defense directly attacked the validity of the identification of defendant as the gunman.

Admission of police photographs or evidence that the defendant was identified from police photographs is sometimes permitted in cases in which identification is an issue. *State v. Bellcourt*, 305 N.W.2d 340 (Minn.1981); *State v. Goar*, 295 N.W.2d 633 (Minn.1980); *State v. Seefeldt*, 292 N.W.2d 558 (Minn.1980); *State v. Serna*, 290 N.W.2d 446 (Minn.1980). Here, identity was not seriously in doubt and the elicitation of evidence concerning the identification of defendant from police photographs was error, albeit unintentional. However, the evidence was overwhelming that defendant fired the shot that killed Sanchez and the evidence also established convincingly that the killing was of the premeditated, deliberate cold-blooded kind. Under the circumstances, a new trial on this ground would be unjustified.

3. Defendant's other contentions relate to (a) the admission of a color morgue photograph of the victim's body, (b) the trial court's failure to give an instruction enumerating the factors bearing on the consideration of eyewitness identification testimony, and (c) the trial court's failure, in its instruction on flight, to define flight or to qualify the instruction by stating that flight following a crime may be motivated by factors consistent with innocence. Defense counsel did not object or otherwise raise these issues in the trial court in a timely manner and therefore defendant is deemed to have forfeited his right to have the issues considered on appeal. *State v. Smith*, 299 N.W.2d 504 (Minn.1980). Nevertheless, after carefully examining the entire record, we find no prejudicial error.

Affirmed.