**STATE of Minnesota, Respondent,**

v.

**Janice EPPLER, Appellant.**

**No. C4–83–1098.**

Supreme Court of Minnesota.

Feb. 15, 1985.

C. Paul Jones, State Public Defender, and Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

## OPINION

PETERSON, Justice.

Defendant was found guilty by a district court jury of three counts of theft of over $150, Minn.Stat. 609.52 (1984), based on a single shoplifting incident in which she took clothes having a total retail market value of $362 from a department store in a shopping center in Roseville. The trial court formally adjudicated defendant guilty of all three counts, stayed imposition of sentence for 5 years, and placed defendant on probation, conditioned on defendant's making restitution in the amount of $181 and on defendant's performing 50 hours of community service. On appeal, defendant seeks (1) a new trial on the ground that the trial court erred in admitting eyewitness identification evidence and an exculpatory statement defendant gave to police and in instructing the jury that it is the duty of attorneys to present evidence on behalf of their clients, or (2) the vacation of two of the three convictions pursuant to Minn. Stat. § 609.04 (1984). We hold that defendant received a fair trial and was properly found guilty of theft, but we vacate two of the three convictions pursuant to section 609.04.

Two store detectives witnessed the theft of the property and saw the thief, a woman, drive away with a male accomplice in a car. Police, using the license number provided by the eyewitnesses, traced the car to a friend of defendant, who gave police defendant's name. Told that she was under suspicion for the offense, defendant voluntarily appeared at the police station accompanied by an attorney and talked with the officer investigating the case. The officer asked defendant if she would let him take her picture and show it and pictures of other women to the eyewitnesses. Defendant at first said no but then agreed after her attorney got the officer to agree to let him preview the photographic display and be present when the display was shown to the witnesses. After taking defendant's picture, the officer reneged on the agreement and showed the pictures to the eyewitnesses without the attorney's presence. Both eyewitnesses positively identified defendant's picture as that of the thief. Subsequently, defendant gave a written statement in which, consistent with an earlier statement, she admitted having been at the store on the day in question but claimed that the witnesses had confused her car with another car that left the parking lot at the same time. At trial both eyewitnesses positively identified defendant.

1. Defendant's first contention is that the trial court should have suppressed the eyewitness identification testimony because (a) the officer broke the agreement to let defendant's attorney preview the photographic display and be present when the pictures were shown to the witnesses, and (b) the display was impermissibly suggestive and tainted the in-court identification testimony.

■ (a) A suspect's right to counsel attaches once he is formally charged. In *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the United States Supreme Court held that a post-indictment or post-charge photographic display is not a "critical stage" of the adversary process and that therefore not even a charged defendant has a right to have his counsel present at such a display.[1] We followed *Ash* in *State v. Higginbotham*, 298 Minn. 1, 212 N.W.2d 881 (1973).

■ There is authority for the proposition that if police have no other basis to conduct a search than the defendant's consent, then the police must abide by any limitation by the defendant on the scope of that consent. 2 W. LaFave, Search and Seizure § 8.1(c) (1978). In this case, however, the officer had probable cause to believe that defendant was guilty of shoplifting and therefore he could have arrested her and taken pictures of her immediately. Stated differently, the officer did not need defendant's consent. Thus, his failure to abide by the terms of the agreement should not render the identification evidence inadmissible.

■ Further, as a matter of fourth amendment law, even if the police illegally arrest a person, take that person's picture, and then show the picture to an eyewitness, the eyewitness' identification need not be excluded pursuant to the federal exclusionary rule if a photograph of the person inevitably would have been obtained through lawful means and shown to the eyewitness. *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. Seefeldt*, 292 N.W.2d 558, 560 (Minn.1980). In this case, even assuming hypothetically that the police could not properly arrest defendant and obtain her picture that way, it appears inevitable that the police would have obtained a picture of her through independent means, would have shown that picture to the eyewitnesses, and would have obtained the eyewitness identification evidence. *State v. Seefeldt*, 292 N.W.2d at 560.

■ (b) There is no merit to defendant's contention that the photographic display was impermissibly suggestive and that it created a "very substantial likelihood of irreparable misidentification" requiring the suppression of the evidence. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ 2. Defendant's next contention is that the trial court should have suppressed the written statement that she made because she gave it only after being promised release pending formal charging if she agreed to give a statement. The issue of the propriety and effect of such a promise was discussed in *State v. Jungbauer*, 348 N.W.2d 344 (Minn.1984). In this case, the attorney who was with defendant at the time she gave the statement to the police conceded in his testimony at the omnibus hearing that the officer never said he would not book her if she gave a statement. The officer said that it did not matter to him if she gave a statement or not because he already had grounds to book her.

■ 3. Defendant's third contention is that the trial court erred in instructing the jury that it is the duty of the attorneys to present evidence on behalf of their clients. The trial court erred in making this statement but the error could not have preju-

---

**1.** On the other hand, a post-indictment or post-charge corporeal lineup is a "critical stage" to which the right to counsel applies. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

diced defendant, since the court made it clear to the jury that defendant had no burden of proof. *State v. Stephanie,* 354 N.W.2d 827, 829 (Minn.1984); *State v. Schmieg,* 322 N.W.2d 759, 760 (Minn.1982).

■ 4. Defendant's final contention is that two of her three convictions should be vacated pursuant to Minn.Stat. § 609.04 (1984), which bars multiple convictions of one offense on the basis of the same conduct. The state concedes that defendant was adjudicated guilty of three counts of theft,[2] that they were based on the same act, and that two of them must be vacated. Therefore, defendant is entitled to have two of the three convictions vacated. *State v. Ponte-Alfonzo,* 348 N.W.2d 734 (Minn.1984).

Affirmed in part, reversed in part.

---

2. The official judgment of conviction which appears as a separate sheet in the file indicates that defendant was formally adjudicated guilty of all three counts. *State v. Plan,* 316 N.W.2d 727, 729 (Minn.1982).