STATE of Minnesota, Appellant,

v.

Edward Charles RODEWALD, Respondent.

No. CO–85–700.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Granted Oct. 11, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Steven H. Alpert, Rice County Atty., Faribault, for appellant.

David Hvistendahl, Hvistendahl & Moersch, Northfield, for respondent.

Heard, considered and decided by RANDALL, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

The State appeals from a pretrial order suppressing evidence of LSD found in respondent's wallet during a stationhouse inventory search. The trial court found the search was. an unlawful investigatory search in violation of respondent's fourth amendment rights. We affirm.

## FACTS

Respondent Edward Rodewald was pulled over and arrested on July 2, 1984, while riding a motorcycle in Faribault. The stop was based on a bench warrant for failure to appear on a family court matter

and the officer's suspicion that the motorcycle handlebars were illegally high. The officer verified the bench warrant and placed Rodewald under arrest. Rodewald was handcuffed and frisked at the scene and transported to the Rice County Law Enforcement Center.

The arresting officer searched Rodewald at the jail. The Rice County deputy jailer was present but did not participate in the search. The officer testified that he made a "jailhouse search," explaining that

[a]ccording to procedures of incarceration, the subject is searched completely. His personal effects are searched to prevent any weapons being brought into the jail and any contraband being brought into the jail.

The officer testified that he searched Rodewald's wallet as part of the jailing process. He did not remember filling out an inventory card on the wallet, as required by Faribault Police procedure, but testified that he thought one was eventually filled out.

The arrest report indicated that Rodewald belonged to an "M.C. [motorcycle] gang." His wallet contained a number of papers and cards relating to various motorcycle groups. The officer testified that he read the papers, making notations of information concerning motorcycle groups. He said the Bureau of Criminal Apprehension had made a general request for information relating to "motorcycle gang members," and he testified that it was his standard procedure to read the billfold contents of everyone booked into jail, "even non-motorcycle gang members," because he

had found in the past that people even carry narcotics, they carry evidence from other crimes and other things that we may not even know of where a crime has been committed, and in jail house searches, this information could lead to the arrest of somebody that was not even a suspect.

During the search the officer found a thin cardboard "acid blotter," (containing LSD) "mixed in" with the cards and papers. The blotter measured about one-half inch by one-half inch and had a black and white design. Rodewald was charged with possession of a controlled substance in violation of Minn.Stat. § 152.09, subd. 1(2) (1984).

The State argued at the suppression hearing that the search was a permissible inventory search or was valid as a search incident to a lawful arrest. In the alternative the State argued that even if the search were unlawful, the acid blotter would inevitably have been discovered by lawful means when the deputy jailor inventoried the wallet. The trial court suppressed the evidence, finding the search an exploratory search in violation of Rodewald's fourth amendment rights.

### ISSUES

1. Was the search of Rodewald's wallet a valid inventory search?

2. Was the search of the wallet a valid search incident to arrest?

3. Would the evidence inevitably have been discovered by lawful means, rendering it admissible even though it was obtained as the result of an unlawful search?

### ANALYSIS

### I

The stationhouse inventory search is a "well defined exception to the warrant requirement." *See Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983) (citing *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). In *Lafayette* the United States Supreme Court addressed specifically whether, consistent with the fourth amendment, it is reasonable for police to search an arrestee's personal effects as part of the routine booking and jailing procedure. A unanimous Court overturned the suppression of amphetamine pills found during an inventory search of an arrestee's shoulder bag, holding that

it is not "unreasonable" for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his

possession, in accordance with established inventory procedures.

*Id.* at 648, 103 S.Ct. at 2611 (footnote omitted). The Court noted that significant governmental interests underlie a stationhouse search of an arrestee's person and possessions, including protecting the arrestee's property, protecting the police from false claims of stolen property, preventing introduction of harmful objects into the detention facility, and assisting in ascertaining the identity of the arrestee. *See id.* at 644–48, 103 S.Ct. at 2609–10. The Court balanced the governmental interests against the intrusion on the arrestee's fourth amendment rights and found the search of the shoulder bag reasonable, stating:

> "[T]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." * * *
>
> Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.

*Id.* (quoting *Cady v. Dombrowski,* 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973)).

Although the authority articulated in *Lafayette* is broad—encompassing inventory searches of "any container or article" in an arrestee's possession—it is not without limits. As the trial court correctly noted, "[a]n inventory search must not be a pretext concealing an investigatory police motive" (citing *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976)). In *Opperman* the Supreme Court upheld the validity of an inventory search of an impounded automobile where there was "no suggestion" that the search was a pretext. *See id.* at 376, 96 S.Ct. at 3100. Here, in contrast, the officer testified that the BCA had made a general request of officers to pass on infor-

mation concerning motorcycle groups obtained during searches, and he admitted that he habitually read the contents of arrested persons' wallets looking for evidence of unrelated crimes and forwarded information to the BCA. This is the type of exploratory search the Supreme Court has stated is impermissible under the fourth amendment. *See, e.g., id.; Cady v. Dombrowski,* 413 U.S. at 443, 93 S.Ct. at 2529.

Even if the officer had not revealed an exploratory motive for the search, the close scrutiny of personal papers would be beyond the scope of a permissible inventory search. The Supreme Court in *Opperman* upheld an inventory search of an impounded automobile conducted "strictly in accord with the regulations of the Vermillion Police Department." *Id.* 428 U.S. at 380, 96 S.Ct. at 3102 (Powell, J., concurring). Justice Powell noted that the decision provided "no general license for the police to examine all the contents of such automobiles." *Id.* at 380, 96 S.Ct. at 3102 (footnote omitted). He stated:

> As part of their inventory search the police may discover materials such as letters or checkbooks that "touch upon intimate areas of an individual's personal affairs," and "reveal much about a person's activities, associations, and beliefs." * * * In this case the police found, *inter alia,* "miscellaneous papers," a checkbook, an installment loan book, and a social security status card. * * * There is, however, no evidence in the record that in carrying out their established inventory duties the Vermillion police do other than search for and remove for storage such property without examining its contents.

*Id.* at 380 n. 7, 96 S.Ct. at 3102 n. 7. Here the officer admitted he did more than search for and remove items from Rodewald's wallet. Rodewald's cards and papers revealed much about his activities and his associations with other motorcycle groups—information which the officer expressly testified he intended to forward to the BCA. This impermissible infringement

on Rodewald's fourth amendment rights is precisely the danger of which Justice Powell warned in *Opperman.*

Finally, in *Lafayette* the Court's holding was limited to inventory searches of containers conducted "in accordance with established inventory procedures." *Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2611 (footnote omitted). The officer's uncertainty over whether and when an inventory report was ever filled out on Rodewald's wallet further erodes the validity of the search. A consistent and complete record of inventory searches would more effectively further the legitimate governmental interests articulated in *Lafayette* and *Opperman* and safeguard arrestees' fourth amendment rights.

## II

█ The State also seeks to justify the stationhouse search of Rodewald's wallet as a search incident to arrest, citing *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), for the proposition that a container can be searched incident to arrest. However, the search incident to arrest exception applies to a search made "as a *contemporaneous* incident of [a lawful] arrest," *see* 453 U.S. at 460, 101 S.Ct. at 2864 (emphasis added), and is based on the need to disarm and to discover evidence, *see id.* at 461, 101 S.Ct. at 2864. Rodewald and his wallet had been transported to the stationhouse and were securely in custody when this search took place. Because the search was neither a contemporaneous incident of the arrest nor justified by a need to disarm or prevent the destruction of evidence, it was not valid as a search incident to a lawful custodial arrest. *See Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2611 (Marshall, J., concurring) (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977)).

## III

█ The State argues in the alternative that even if the search were unlawful, the acid blotter would inevitably have been discovered by lawful means when the deputy jailor inventoried the wallet. It cites *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), under which unlawfully obtained evidence is admissible if the prosecution can establish that the evidence would have been ultimately or inevitably discovered by lawful means. *See id.* at ——, 104 S.Ct. at 2509. *See also State v. Eppler,* 362 N.W.2d 315, 317 (Minn.1985). The officer testified, however, that the blotter was a small, thin cardboard "mixed in" with the cards and papers in Rodewald's wallet, and he found the blotter after he had begun scanning the cards and papers. Because of the size and location of the suppressed evidence, we do not agree that it would inevitably have been found absent the impermissibly close scrutiny of Rodewald's personal papers.

## DECISION

We affirm the suppression of the LSD seized from Rodewald's wallet because it was obtained in violation of his fourth amendment rights.

Affirmed.