Victor **CORALIN**, a.k.a. Victor Coralinnadal, etc., Respondent,

v.

**STATE of Minnesota,** petitioner, **Appellant.**

No. C2-84-1921.

Supreme Court of Minnesota.

Dec. 6, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert F. Carolan, Dakota County Atty., Mark Nathan Lystig, Asst. Dakota County Atty., Hastings, for appellant.

C. Paul Jones, State Public Defender, Lawrence Hammerling, Asst. State Public Defender, Minneapolis, for respondent.

YETKA, Justice.

In October 1980, respondent, Victor Coralin, was convicted of two counts of criminal sexual conduct in the Dakota County District Court. Coralin subsequently left the state, delaying sentencing until September 1983. The trial court conducted a hearing for post-conviction relief in August 1984. The petition was denied and appeal taken to the Minnesota Court of Appeals. The court of appeals reversed the trial court, and appeal was taken to this court. We reverse the court of appeals and reinstate the trial court verdict.

In April 1980, A.V., age 7, lived in the Highsite apartment complex with his mother and stepfather. At approximately 6:45 p.m. on April 22, he came home late for dinner appearing upset, his face flushed and heart pounding. He told his mother that a man had chased him in the building. She immediately contacted the police. A.V. told the police that he had been chased by a black man in the building activities room area. The police proceeded to ask the building night manager whether a black man had recently used the activities room. The manager said that she had given the key necessary to get into the room to a black resident at approximately 6:30 p.m. and that he returned the key about 15 to 20 minutes later. Two other residents helped identify the man as the respondent, Victor Coralin, a black resident in his late 30's. Coralin was one of two black male residents, the other having a vastly different physical appearance. The police went to Coralin's apartment, but his wife said that he was not home. The officers returned later that night and questioned Coralin. According to the investigating officer, Coralin stated that he had been in the activities room, but maintained that it was at 4:00 or 4:30 p.m. and denied having assaulted anyone.[1]

On April 23, the police took A.V. into the activities room so that he could better describe the incident. While in the room, A.V. grew extremely upset and, after much hesitation, eventually told his mother, who in turn told the police, that the man had grabbed him, pulled both their pants down, and had inserted his finger into the boy's anus. A.V. said that the man's name was "Vic" and described him as having short hair, wearing a light blue shirt, blue jeans and a watch with a silver band, and being slightly shorter than the officer. This description matched Coralin. A.V.'s mother examined him, but found no sign of injury. Police arrested Coralin in his apartment that afternoon. He made a statement admitting that he was in the activities room

1. Coralin's wife, however, testified at trial that her husband told the police that he had been to the activities room twice: at 4:00 and then just before he came home at 6:30–6:45 p.m.

twice, at 4:00 and 6:30–6:45 p.m., but denying that anyone was with him.[2] On April 25, 1980, Coralin was charged with criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. a (1984) and in the second degree in violation of Minn.Stat. § 609.343, subd. a (1984).

The Dakota County District Court held an omnibus hearing on June 9, 1980, at which time the arresting officer testified that the police had not conducted a photo lineup with either A.V. or state's *Spreigl* witness T.N.

Jury trial began on October 23, 1980, in the Dakota County District Court. A.V. testified that he went to the activities room with Coralin because he had been promised a can of soda. He stated that he had seen Coralin three times before, but had never spoken to him. According to A.V., Coralin inserted his finger in his anus for approximately 10 minutes during which Coralin would say "it does." When A.V. was asked to identify his assailant in court, defense counsel objected on the grounds that a photo lineup had been conducted subsequent to the omnibus hearing, but prior to voir dire, which he had not had the opportunity to review.[3] The court did not require an offer of proof and denied the motion, finding that the witness had an independent basis for identifying the assailant. A.V. then made an in-court identification of Coralin as the man who sexually assaulted him while in the activities room on April 22, 1980.

The night manager at the Highsite apartment complex also made an in-court identification of the defendant as the person to whom she had given the activities room key at approximately 6:30 p.m. on April 22, 1980.

T.N., a *Spreigl* witness, was then asked to make an in-court identification of a man whom he claimed had rubbed his buttock while in the activities room in January 1980. Defense counsel objected on the grounds that an out-of-court photo lineup had also been recently shown to T.N. which counsel maintained he had learned about only the day before and, therefore, had no opportunity to review. The state replied that defense counsel knew of the photo lineup a substantial period of time before T.N.'s testimony. Furthermore, the prosecutor again offered to provide both defense counsel and the court with the pictures used in the photo lineup and made an offer of proof that T.N.'s in-court identification was based not on the photo lineup, but on his several prior encounters with Coralin. T.N. testified that he had met Coralin "[m]aybe two or four times" before the incident in the activities room in January 1980. Defense counsel then moved for a mistrial, and the court denied the motion. T.N.'s testimony was continued until the next day, at which time defense counsel renewed his objection to the in-court identification and requested a suppression hearing. Defense counsel once again offered to make the photo lineup available, arguing that the identification was based on independent grounds and stating that the parties had stipulated to an in-court identification. The court denied the motion. The ruling was based on the state's assertion concerning a stipulation between the parties allowing such an identification. T.N.

---

**2.** The statement was introduced at trial as State's Exh. 1.

**3.** The state replied:

Mr. Rogesheske [defense counsel] and I did discuss this matter and we came to an agreement wherein that agreement was misunderstood by both parties. It is my understanding, and I agreed I would not elicit any kind of recording of that lineup that was subsequent to the omnibus hearing.

It was my understanding that we could elicit any other identification testimony as long as it did not relate to this lineup. Oh, I am prepared to make an offer of proof that this little boy is making, or is going to make his identification in court not on the basis of the lineup but on the basis of his independent recollection, on an in-court identification of the man.

I am willing however at this point to adjourn and let counsel for defense view the lineup photo lineup and let the court view the photo lineup and make a determination of whether or not it was unduly prejudicial, but at this point I only intend to introduce evidence of independent identification, not based on anything contained in the photo lineup.

then made an in-court identification of Coralin as the man who had rubbed his buttock in the Highsite apartments activities room in January 1980.

The defense called a character witness who had allowed Coralin to play with her children and also called one of the children. Coralin's wife, Mary, next testified as to both her husband's good character and the events of April 22 and 23, 1980. She stated that Coralin was not home when she returned to their apartment at 6:00 p.m. and that he had admitted to the officers that he had been in the activities room just before he came home. Coralin did not testify. The jury returned a verdict of guilty on both counts of sexual misconduct.

On January 2, 1981, Coralin moved for a judgment of acquittal or, in the alternative, a new trial based on several grounds, including possible impermissibly suggestive pretrial identification procedures and insufficiency of the evidence. The district court heard and denied the motion on January 5, 1981.

Early in 1981, before his sentencing, Victor Coralin left the country, staying in Puerto Rico and not returning until late 1983. A sentencing hearing was held in Dakota County District Court on September 20, 1983, and Coralin pled guilty to failure to appear before the court in violation of Minn.Stat. § 609.49 (1984). The court dismissed the second count of sexual misconduct and sentenced Coralin to a stay of imposition with conditions of 6 months in jail and 10 years probation. For failure to appear, Coralin was sentenced to 6 months in the county jail, running concurrently with his other sentence; no further probation was imposed.

On July 24, 1984, Coralin petitioned the district court for post-conviction relief on the grounds that the evidence was insufficient and that his due process rights were violated by the photo lineup procedure. The district court held a hearing on August 30, 1984. At the hearing, only memoranda of law were submitted, and no additional evidence was admitted. The court denied the petition, holding that there was evidence sufficient to support the conviction and that there were independent grounds for identification since the victim had known the defendant before the incident by name. Coralin appealed from the post-conviction order to the Minnesota Court of Appeals.

On March 13, 1985, the court of appeals reversed the post-conviction order and remanded the case for new trial based on the failure of the trial court to hold a midtrial hearing on the photo lineup identification procedure. *Coralin v. State*, 363 N.W.2d 915 (Minn.App.1985). The state's petition for further review was granted by this court on May 24, 1985.

The issue presented in this appeal is whether the court of appeals was correct in ruling that the district court committed reversible error in not holding a midtrial hearing on the photo identification procedures as requested by the defense.

The court of appeals held that if a photo identification is conducted, the defendant has the due process right to judicial review of the process before an in-court identification. *Coralin*, 363 N.W.2d at 916. The court further held that if the photo identification occurs after the pretrial omnibus hearing, a midtrial hearing must then be held out of the presence of the jury if the defendant so requests. The court found that, without such a midtrial hearing, it was not possible for the district court to determine accurately whether there were adequate independent grounds for the in-court identification.

The state argues that the court of appeals was in error since the prosecutor was not offering into evidence the pretrial photo identification results, but was only offering an in-court identification. The appellant concedes that a midtrial hearing would be mandatory if the photo identification procedures themselves were to be offered into evidence. Even if a hearing had been held and the photo identification procedures found to be impermissibly suggestive, the state argues that the evidence clearly establishes that both A.V. and T.N. had independent grounds upon which to

base their in-court identification. The state further maintains that the objections of defense counsel at trial were "dilatory" since counsel made no attempt to inquire into the photo lineup procedure at trial or in the post-conviction hearing. Finally, the state argues that, even if the identification testimony was improperly admitted, there was no prejudice to the defendant's case since the state also had the unchallenged testimony of the night manager identifying Coralin as the resident who took the keys for the activities room at the time of the incident.

Respondent Coralin maintains that the court of appeals correctly ruled that he possessed a due process right to have a photo lineup judicially scrutinized to determine whether the in-court identification had been tainted. According to Coralin, the rules of criminal procedure and the decisions of this court have expressly mandated a midtrial hearing to determine whether an in-court identification was tainted by suggestive police procedures. Coralin further argues that, without a midtrial hearing, it was not possible for the court to determine accurately whether A.V. or T.N. had independent grounds for identifying Coralin as the assailant.

The United States Supreme Court has ruled that it is a denial of due process for an out-of-court photo lineup to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This includes in-court misidentifications: "Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup *or courtroom identification.*" *Simmons,* 390 U.S. at 383–84, 88 S.Ct. at 970–71 (emphasis added). In *State v. Sickels,* 275 N.W.2d 809 (Minn.1979), the victim, who

had been shown photographs of the defendant out of court, made an in-court identification of the defendant. This court stated: "In an appropriate case we would not hesitate to reverse if we concluded that suggestive procedures such as those followed here were so unnecessarily suggestive as to create under all the circumstances a 'very substantial likelihood of irreparable misidentification.'" *Id.* at 814 (quoting *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254). Therefore, the state's position is untenable that due process concerns arise only when the state attempts to introduce evidence of the photo lineup itself. An in-court identification by a witness who had been shown a suggestive photo lineup clearly raises due process concerns.

Minn.R.Crim.P. 11.02, subd. 1 requires that the trial courts conduct an omnibus hearing to resolve challenges made under Minn.R.Crim.P. 8.03. These include challenges to pretrial photo lineups. Minn. R.Crim.P. 8.03, 7.01, subd. 4. The rationale behind this rule extends to a midtrial hearing held in situations where the out-of-court photo lineups were conducted after the omnibus hearing. In *Sickels,* this court, while allowing the in-court identification on other grounds, stated:

> While we would not hesitate to reverse if the prosecutor's failure to comply with the notice requirement prejudiced defendant in any way, we do not agree with defendant's contention that he was prejudiced. At no time did defendant request a midtrial hearing out of the jury's presence to determine the admissibility of the eyewitness identification evidence before any of this evidence was admitted. The matter could have been handled easily in this way. *See, State v. Kluck,* 299 Minn. 161, 217 N.W.2d 202 (1974).

*Sickels,* 275 N.W.2d at 814–15. The court held that notice should be given of post-omnibus hearing photo lineups so that a midtrial hearing may be held:

> As for the second photographic show-up, the one which occurred on the day of trial, the prosecutor should have in-

formed the court and opposing counsel of his desire to conduct the showup and the reason for it. The court then, with the participation of both attorneys, could have taken steps to assure the fairness of the viewing.

*Sickels,* 275 N.W.2d at 814 n. 1. As the court of appeals found, it follows from the rule of *Sickels* that, upon request, the trial court should grant a midtrial hearing in situations where an out-of-court photo lineup was conducted after the omnibus hearing.[4]

■ The court of appeals also found that, without a midtrial hearing, it was not possible for the district court to determine whether there were independent grounds for the in-court identification. Such independent grounds for the identification would allow the testimony to be admitted under *Manson,* 432 U.S. at 107–14, 97 S.Ct. at 2249–2253. Defendant argues that the district court's failure to grant the requested midtrial hearing is a denial of due process and, therefore, a constitutional error which must be harmless beyond a reasonable doubt if the court is not to be reversed. *See State v. Fossen,* 282 N.W.2d 496 (Minn.1979). The district court justified its denial of the midtrial hearing on the grounds that there were clear independent grounds for the witnesses' in-court identifications of Coralin. We agree with the district court and reverse the court of appeals on these grounds.

In evaluating whether there are adequate independent grounds for an in-court identification, the United States Supreme Court has set forth the following factors under a totality of the circumstances test:

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil,* 409 U.S. at 199–200, 93 S.Ct. at 382. In *Sickels,* this court allowed an in-court identification by two witnesses who had been shown an impermissibly suggestive out-of-court photo lineup during trial to be admitted without a midtrial hearing since the court found that there were independent grounds for the identification:

While the two showings of the defendant's picture alone to the complainants may have created a likelihood of misidentification, the facts are not before us which would make the likelihood of irreparable misidentification substantial. The complainants had an adequate opportunity to view their assailant, they paid close attention to him, their description of him fit defendant, and they identified defendant at trial even though his appearance was drastically changed. In view of all these factors, we conclude that the identification testimony was reliable.

*Sickels,* 275 N.W.2d at 814. In the present case, it is also clear that there were independent grounds for identification and that the failure to hold a midtrial hearing is harmless error beyond a reasonable doubt. A.V. and T.N. did have the opportunity to view their assailant, and A.V.'s subsequent descriptions were generally consistent with Coralin's appearance. Coralin was one of only two black male residents of the apartment complex, and the other black resident had an entirely different physical appear-

---

4. The error here went to the failure of the court to scrutinize the photo lineup at all. In *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), the United States Supreme Court held that it was only "prudent" to conduct midtrial hearings outside of the hearing of the jury, *i.e.,* that it was not necessarily a denial of due process. The crux of the present issue is not, however, that a hearing was not held outside of the presence of the jury, but that no hearing was held at all to determine whether the out-of-court photo lineups were impermissibly suggestive or whether there were independent grounds for identification. In *State v. Eppler,* 362 N.W.2d 315 (Minn.1985), this court ruled that pretrial photo lineups are not critical stages in the adversary process requiring the presence of counsel. This does not mean, however, that an unnecessarily suggestive photo lineup will not raise constitutional concerns. *See Manson,* 432 U.S. at 116, 97 S.Ct. at 2254.

ance. Moreover, Coralin admittedly received the key to the recreation room from the night manager and was in the room at approximately the time A.V. testified the act took place. Accordingly, there was no possibility of improper or erroneous identification. Defense counsel himself, while arguing for a midtrial hearing, stated: "I think you had enough by the description and by what the police officer's indication [sic], that the fellow was dropping the key off and connected him up with it; that would be enough to go to the jury on identification."

There is also much to support the prosecutor's argument that the objections of defense counsel at trial were dilatory. Defense counsel knew, prior to his objection at trial, that there had been a post-omnibus hearing photo identification. If he wanted a court hearing on the issue, then he had a duty to inform the court as soon as he knew and should not have disrupted the case in midtrial to make such a request. Furthermore, counsel did not voir dire any witnesses before their identification testimony nor did he inquire into the photo lineup identification on cross-examination either during the trial or during the post-conviction hearing. In addition, counsel did not pursue several offers made by the state to review the photo lineup.

The existence of these factors, coupled with the independent grounds for identification held by both A.V. and T.N., lead us to conclude that, while there was error on the part of the trial court in denying the request for a midtrial hearing, it was harmless error not only beyond a reasonable doubt, but harmless beyond any doubt.

■ At the post-conviction hearing and his appeal to the court of appeals, Coralin raised a sufficiency of the evidence challenge. The court of appeals did not address the issue, and it now appears only in the state's brief. This court will not disturb the verdict of the jury if it can reasonably conclude that a defendant was proven guilty of the offense charged. *State v. McCullum*, 289 N.W.2d 89, 91 (Minn.1979). The court examines the evidence in the light most favorable to the verdict. *State v. Oevering*, 268 N.W.2d 68, 71 (Minn. 1978). Under this standard of review, it is clear that the direct evidence of A.V.'s testimony and the supporting testimony of his mother, the night manager, the police, and the *Spreigl* witness were sufficient to sustain the verdict.

The court of appeals is reversed and the verdict reinstated.