## STATE v. DAVID M. KLUCK.

217 N. W. 2d 202.

April 19, 1974—No. 44085.

*C. Paul Jones,* State Public Defender, and *Mollie G. Raskind,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Theodore R. Rix, Vernon E. Bergstrom, a*nd *Michael McGlennen,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Peterson, Todd, and Yetka, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

Defendant, David M. Kluck, was found guilty by a jury in Hennepin County District Court of the crime of aggravated robbery in violation of Minn. St. 609.245. Appealing from the judgment of conviction, he raises a number of issues, three of which merit consideration in some detail: (1) Whether the removal of defendant from the courtroom during the preliminary hearing was a denial of due process or of the right of confrontation; (2) whether the trial court erred in holding a supplemental Rasmussen hearing after trial began and refusing either to suppress evidence there introduced or to declare a mistrial; and (3) whether the instruction on alibi was prejudicial error.

The robbery of which defendant was convicted took place at Dady's Pharmacy in northeast Minneapolis on the evening of January 20, 1972. At about 8:55 p.m. three men entered the pharmacy together. While two of them proceeded toward the rear of the store, the third, wearing a fur coat and black stocking cap, approached two of the store's employees and ordered them to lie on the floor. When they hesitated, he informed them that a robbery was in progress. They complied and while they were on the floor, the other two men approached the pharmacist in the rear of the store, pulled a gun, and demanded narcotics. After obtaining the drugs, the three men left the store.

In investigating the robbery, the Minneapolis police showed mugshots to the pharmacy employees on several occasions and obtained tentative identifications of defendant as resembling the fur-coated robber. On March 2, 1972, defendant was arrested

in connection with another charge. Two days later, after informing defendant of his Miranda rights, Lieutenant Robert C. Collins told defendant he was under investigation for the pharmacy robbery. According to Collins, defendant replied, "Just tell me when it happened and I'll think up a place where I was at that time." Defendant was subsequently placed in a lineup and was more positively identified by the pharmacy employees as the robber.

A complaint was thereafter filed charging defendant with aggravated robbery. On March 21, 1972, a preliminary hearing was held in Hennepin County Municipal Court. At the hearing defendant was represented by a public defender with whom he had not conferred previously; defendant made known this fact, together with his objections, to the court. After some discussion with counsel at the bench, the court explained to defendant the limited purposes of the hearing and indicated that it would proceed. Defendant's behavior in response led first to his restraint and then to his eventual expulsion from the courtroom:

"DEFENDANT KLUCK:   We are not going through with these proceedings. I am not accepting that. He knows nothing whatsoever about this.

"THE COURT:   We are going through this hearing.

"DEFENDANT KLUCK:   You can't railroad somebody like that into prison. Thirty years of my life are at stake.

"THE COURT:   Mr. Bailiff, take him out. We will take a five-minute recess and see if he is ready to proceed then. If not we will have to take measures to see that he is ready for court. We will take a recess of five minutes."

After a short recess, the court announced the hearing was transferred to another courtroom, and upon convening in the other courtroom, the following occurred:

"DEFENDANT KLUCK:   I am not going through with this trial.

"THE COURT:   Mr. Kluck—.

"DEFENDANT KLUCK:   You are going to have to contain me,

164

Your Honor, because I'm not going to do anything to allow this to go on.

"THE COURT: All right.

"DEFENDANT KLUCK: My attorney hasn't talked to me and he knows nothing about the facts of this and you just can't railroad a man into prison.

"THE COURT: Mr. Bailiff, take him upstairs, put him under restraints, and tape his mouth if you have to and bring him back.

(Short recess.)

"THE COURT: You may be seated. I would like to read into the record what has occurred in this matter. The preliminary hearing was called at approximately 2:30 this afternoon and was immediately disrupted by statements made by the defendant and it was impossible to proceed in an orderly fashion with this serious and important matter. The Court, lest there be any question, at that time took a recess of approximately fifteen minutes in the hope that the defendant would wish to cooperate in the orderly conduct of the hearing. Upon returning to the courtroom it was impossible to proceed further, the defendant being unwilling to assure the Court that he would permit the proceedings to continue in an orderly fashion, and the Court deemed it necessary to restrain the defendant. It is the desire of the Court that the defendant be permitted, as is his right, to be present during this hearing, and the Court will now proceed to take the testimony with the hope that the defendant will not obstruct the orderly process.

"DEFENDANT KLUCK: I don't want him as my attorney.

"A VOICE: Just be quiet.

"DEFENDANT KLUCK: I want to fire him. Any attorney that would allow me to go through this isn't representing me.

"THE COURT: Mr. Kluck—.

"DEFENDANT KLUCK: I demand the right to make a phone call to call any other attorney.

"THE COURT: Mr. Kluck, I am going to conclude, and do conclude, that your conduct constitutes a waiver of your right to be

present during this hearing. I am going to order you removed to the County Jail at this time and order the proceeding to commence with the taking of testimony, and it is with regret that I do this but I find it necessary. Will the bailiff please escort the defendant to the jail."

After defendant's removal, the hearing proceeded, with defendant's counsel participating and cross-examining the state's witnesses. The court made a finding of probable cause and bound defendant over to district court for trial.

A pretrial hearing was held in district court on June 9, 1972. The court first considered defendant's pro se petition for a writ of habeas corpus challenging the preliminary hearing; the court denied relief and denied defendant's motion for a stay pending appeal.[1] The court then proceeded to conduct a Rasmussen hearing. Although the state had initially indicated that there was a question of the admissibility of physical evidence, at that hearing it stated that only certain statements of defendant were in issue. Defendant's statement to Lieutenant Collins regarding "thinking up" his whereabouts was then considered and ruled admissible.

Trial began on June 12, 1972. At the conclusion of the first day's testimony, it became apparent that the state would probably introduce exhibit evidence, the admissibility of which had not been determined at the Rasmussen hearing. Although defendant moved for a mistrial or for suppression of the evidence, the court ruled that a supplementary Rasmussen hearing would be held. This hearing was held outside the presence of the jury, and the evidence, principally the black fur coat which the state claimed to have taken from defendant at the time of his arrest, was ruled admissible.

---

[1] We note in passing that although defendant claims error in the trial court's alleged refusal to permit an appeal of this matter, defendant was still free to appeal despite the trial court's refusal to stay the proceedings.

The trial then resumed and, after conclusion of the state's case, defendant presented an alibi defense. After instructing the jury and asking counsel for comments, the court gave a supplementary instruction on alibi. The jury thereafter returned a verdict finding defendant guilty of aggravated robbery, and the court ordered entry of the judgment from which defendant appeals.

■ The principal issue raised by defendant is the claimed constitutional infirmity in the process by which defendant was removed from the courtroom during the preliminary hearing. While a preliminary hearing is a statutory rather than a constitutional requisite, see Minn. St. 629.50, a preliminary hearing, if held, is a "critical stage" of the criminal prosecution. Coleman v. Alabama, 399 U. S. 1, 90 S. Ct. 1999, 26 L. ed. 2d 387 (1970). Whether or not the Sixth Amendment confrontation clause itself applies to a preliminary hearing, the statutory provisions for preliminary hearing in Minnesota would in any event guarantee the accused's right to be present:

§ 629.50. "The magistrate before whom any person shall be brought upon a charge of having committed an offense shall, as soon as may be, examine the complainant and the witnesses in support of the prosecution, on oath, in the presence of the party charged, in relation to any pertinent matter connected with such charge, after which the witnesses for the prisoner, if he has any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross-examination of the witnesses in support of the prosecution."

Although defendant thus had a right to be present initially, he may by his conduct have waived that right. In Illinois v. Allen, 397 U. S. 337, 90 S. Ct. 1057, 25 L. ed. 2d 353 (1970), the leading recent case on the confrontation clause, the United States Supreme Court held that confrontation rights may be lost by a defendant's persistence in obstreperous conduct despite warnings. See, also, Mayberry v. Pennsylvania, 400 U. S. 455, 91 S. Ct. 499,

27 L. ed. 2d 532 (1971). Allen's approach to this issue thus governs this case.

In Allen, the defendant persistently reviled both the trial judge and his own lawyer, tore his lawyer's files, and despite warnings, continued to make abusive and threatening remarks to the judge. After several warnings and one expulsion and return followed by renewed outbursts, Allen was removed from the courtroom until he promised to conduct himself appropriately. During his absence, the state's case in chief continued and was completed.

In an opinion by the late Mr. Justice Black, the United States Supreme Court held that the right to be present was not absolute but had to be balanced with the interest in the orderly administration of justice. Thus, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U. S. 337, 343, 90 S. Ct. 1057, 1060, 25 L. ed. 2d 353, 359. Applying these standards to the case before it, the court held that Allen lost his right to be present by his repeated disruptive behavior despite ample warning of possible consequences.

Defendant here argues that the Allen case does not justify his removal from the courtroom because he had received no advance warning of possible expulsion. While the court below may not have explicitly warned defendant of the possibility of exclusion itself, there was certainly adequate warning that corrective measures would be taken if defendant's disorderly conduct continued. After defendant's initial outbursts, the court first explained the purpose of the hearing to defendant and then took a recess after warning defendant that measures would be taken if he was not then ready for court. Upon his return, after further protests, defendant was put under restraints and the court indicated its desire that "the defendant be permitted, as is his right, to be

present." Only when the restraint did not succeed in quieting defendant was he finally ordered removed.

We find little merit in defendant's further arguments regarding his removal and thus conclude that the municipal court acted in compliance with Allen in removing defendant. Because a preliminary hearing takes place before a judge alone and is fairly limited in its purposes, see e. g., State ex rel. Ballinger v. Tahash, 273 Minn. 177, 179, 140 N. W. 2d 53, 54 (1966); State ex rel. Hastings v. Bailey, 263 Minn. 261, 266, 116 N. W. 2d 548, 551 (1962), the interests protected by the defendant's presence in the courtroom may be less severely impaired by his removal at this stage of the proceedings. Nevertheless, the court here employed a variety of means in an effort to allow defendant to remain. The court proceeded in his absence only after defendant's conduct had clearly demonstrated the futility of other approaches. Under the circumstances, the court properly found that defendant had waived his right to be present. See, A.B.A. Standards for Criminal Justice, The Function of the Trial Judge (Approved Draft, 1972) § 6.8; Note, *Guidelines for Controlling the Disruptive Defendant*, 56 Minn. L. Rev. 699, 701.

■ Defendant contends that the trial court erred in holding the supplemental Rasmussen hearing after trial began and refusing either to suppress the evidence there introduced or to declare a mistrial. Defendant does not contend that the fur coat which was the subject of this supplementary hearing was unconstitutionally seized but primarily argues, instead, that he was unfairly surprised and sustained irreparable prejudice by the prosecution's failure to disclose its intent to introduce the coat earlier and by its references to the coat at trial. We find no evidence of unfair surprise or prejudice. Nor do we find any substantiation of defendant's claim that the police substituted the fur coat for the jacket defendant claimed he wore at the time of his arrest.

In State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 553, 141 N. W. 2d 3, 13 (1965), we outlined the procedures for notice and pretrial hearing to be followed when evidence obtained through

search and seizure or confessions will be introduced by the state at trial. The steps outlined there are rules of procedure "to be followed by the trial courts of this state whenever possible." Id. Thus, early notice and pretrial hearing are not absolute constitutional requisites; under particular circumstances considerable leeway from the procedures established in Rasmussen has been held permissible. See, State v. Colonga, 291 Minn. 507, 188 N. W. 2d 925 (1971) ; State v. Doust, 285 Minn. 336, 173 N. W. 2d 337 (1969) ; State v. Fields, 279 Minn. 374, 157 N. W. 2d 61 (1968). While early notice and hearing are necessarily to be preferred, under the circumstances of this case the delay did not constitute prejudicial error.

■ Although defendant raises a number of other points, our only concern is with the trial court's instruction on alibi. At the close of the charge, the court asked if there were any errors or omissions. After conferring with counsel, the court stated that it had failed to comment on alibi and added:

"* * * That it is a defense where the defendant claims that he was elsewhere than the location of the crime at the time it was committed. This is a defense that is easily contrived and hard to disprove. So you should weigh this with great care and caution the same as you weigh any other piece of evidence."

Defendant was presumably satisfied with the instruction at that time, for no objection was made to it.

Similar cautionary instructions on alibi have been considered by this court on a number of occasions. Barness v. State, 290 Minn. 509, 187 N. W. 2d 111 (1971) ; State v. Keezer, 274 Minn. 292, 143 N. W. 2d 627, certiorari denied, 385 U. S. 896, 87 S. Ct. 216, 17 L. ed. 2d 141 (1966) ; State v. Wilson, 238 Minn. 447, 57 N. W. 2d 412 (1953) ; State v. Duddy, 152 Minn. 179, 188 N. W. 261 (1922). Although we have said that such cautionary instructions are not to be recommended, we did not in those cases hold such instructions to be reversible error. As we noted in State v. Wilson, 238 Minn. 447, 452, 57 N. W. 2d 412, 415:

"While it may not be necessary to lay down an ironclad rule that any cautionary instruction regarding evidence tending to prove an alibi is always reversible error, such instruction, if given at all, must be given with extreme care to the end that evidence tending to prove an alibi is given proper consideration by the jury. Such defense, if proved, is as valid as any other defense. In many cases it is the only defense available to a defendant."

If there was need for any cautionary instructions at all, they might well have been more carefully phrased to make clear to the jury that defendant had only to create a reasonable doubt through the alibi defense. However, we conclude from the whole of the instructions and the context in which this instruction was given, that no reversible error was committed.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.