STATE of Minnesota, Respondent,

v.

Mitchell Jay LANDA, Petitioner, Appellant.

No. C4–00–1673.

Supreme Court of Minnesota.

May 2, 2002.

Steven P. Russett, Asst. State Public Defender, Minneapolis, for Appellant.

Mike Hatch, State Atty. General, Susan Gaertner, Ramsey Cty. Atty., Jeanne L. Schleh, Asst. Ramsey Cty. Atty., St. Paul, for Respondent.

## OPINION

GILBERT, Justice.

On May 11, 2000, Mitchell Jay Landa was convicted of first-degree aggravated robbery. Landa appealed his conviction and argued, among other things, that (1) there was insufficient evidence to support the conviction because the eyewitness identifications were inaccurate and unreliable and (2) the district court abused its discretion in refusing to give an alibi instruction to the jury. In an unpublished opinion, the court of appeals rejected all of Landa's arguments and affirmed the conviction. We affirm.

On December 31, 1999, around 3:00 p.m., a man wearing an aviator-style cap entered the Minnehaha Tavern in St. Paul. The bartender, the pull-tab operator, and five other patrons were in the bar. The man purchased a beer from Elmer Poirer, the bartender, and sat at a table by himself.

Sometime later, the bartender dropped a $20 bill behind the bar and a customer helped him retrieve it. At the same time, the man wearing the cap approached Rita Boyles, the pull-tab operator, and said, "Hand it over." Boyles, realizing that she was about to be robbed, said, "You don't want to do that." The man again said, "Hand it over," and lifted up his shirt to show Boyles that he had a gun. Fearing that she would be shot, Boyles pushed her booth forward and the man then took the cash from the drawers. Sharon Engevik, a patron, felt Boyles push the pull-tab booth toward her. Engevik turned around, saw the man taking the money from the drawers, and yelled, "Call 911!" The man ran to the back door. Boyles said, "I have been robbed and he has got a gun." Terry Leis, a patron, called 911. Jerald Engevik, Sharon Engevik's husband, followed the man out the back door. He observed the man get into the driver's side of a blue four-door car with license number 327–HFA and drive off. He saw no one else in the car. It was later determined that the man had taken $414.

The St. Paul police interviewed all seven witnesses. The witnesses described the robber as a white male who was approximately 5 feet 10 inches tall and weighed between 150 and 170 pounds. They stated that the robber was in his thirties, had some facial hair (stubble), and was wearing an aviator cap and a blue jacket. Boyles said that the robber had brown eyes.

The police determined that the car was registered to Robert Allbee. Because Allbee was in jail at the time of the crime, the police focused their attention on Allbee's associates. Officer Kevin Moore assembled three photo lineups and included photos of some of Allbee's associates in the lineups. The photo lineups did not contain a photo of appellant. Boyles, Poirer, and Leis separately examined the three line-ups. Boyles stated that the robber was not there. Poirer made no positive identification, but believed that the robber "kind of looked like" one of Allbee's associates. Leis made no positive identification, but believed that the robber "kind of looked like" one of Allbee's associates and another fill-in.

On January 5, 2000, Moore drove by the home of Ronald Class, an associate of Allbee's, and observed the car used by the robber in the driveway. He then saw a female drive off in the car. Another officer stopped the car and Moore identified the driver as Mitchell Landa's girlfriend, Nicole Walters. According to Moore, Walters said that the car belonged to Landa and that Landa had been gone for a few hours during the afternoon of December 31 to visit a friend. Based on this information, Moore returned to Class's home and obtained permission from Michelle Lee, a resident, to enter the house to arrest Landa. The officers used a police dog and arrested Landa, who was hiding under a bed. The officers recovered a blue jacket belonging to Class. Boyles later stated that the jacket found by the police was not the jacket worn by the robber.

On January 6, the police prepared two photo lineups, one of which contained Landa's picture. They again separately showed the lineups to Boyles, Leis, Poirer, and the Engeviks. Boyles, Leis, Poirer, and Sharon Engevik identified Landa as the robber. Jerald Engevik said that he was not sure, but believed that the robber was either Landa or one of the fill-ins.

Landa was charged with first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2000). At Landa's trial, Boyles, Leis, and the Engeviks identified Landa as the robber. Poirer testified that the person he identified in an out-of-court photo lineup on January 6 was the

robber. At that time, Poirer had identified Landa as the robber. At Landa's trial, Poirer testified that Landa looked similar to the robber, but that he could not be sure.

In his defense, Landa called his friend Roger Blahowski to testify. Blahowski testified that in the spring and summer of 1999, he and Landa had frequently patronized the Tavern, played pull-tabs, and occasionally won. The records of the Tavern's pull-tab winners indicated that Blahowski won 15 pull-tabs in the spring and summer of 1999, but there was no evidence regarding wins by Landa. Blahowski also testified that he arrived at the Class home on December 31, 1999 between 4 and 6 p.m. and woke Landa up. On cross-examination, Blahowski acknowledged that he knew Landa had been arrested for the robbery, but had not contacted police about the alibi. Blahowski also acknowledged his own four prior felony convictions. The Tavern's patrons and employees who identified Landa as the robber in court did not corroborate Blahowski's testimony that Landa had frequently patronized the Tavern in the spring and summer of 1999.

Landa testified on his own behalf and denied robbing the Tavern. Landa claimed that he was sleeping all day on December 31 until Blahowski woke him up. Landa testified that Albee had sold the car used in the robbery to Chad Campeau and that Landa borrowed the car from Campeau's girlfriend on January 4 and let Walters use the car on January 5. Landa also testified that he bought the car on January 4. According to Landa, he and Blahowski had frequently patronized the Tavern during the spring and summer of 1999, had played pull-tabs, and had won a few times. Landa acknowledged that he had been convicted of unauthorized use of a motor vehicle, felony theft, auto theft, burglary, possession of a controlled substance, simple robbery, possession of tear gas by a felon, and escape from custody.

Landa called his friend Rachel Rolfer to testify. Rolfer testified that on December 31, 1999, she visited someone who lived with Landa and that Landa was present the entire afternoon. Rolfer also testified that she knew that Landa had been arrested for the robbery, but had not told police about Landa's alibi.

Nicole Walters also testified on behalf of Landa. According to Walters, Landa was with her on December 31 and slept until about 6:00 p.m. Walters testified that she had not seen Landa driving the car used in the robbery until January 4. Walters said that when the officers stopped her on January 5, she told them that she got the car from Landa and that Landa had been with her on December 31. On cross-examination, Walters denied telling the police that the car belonged to Landa. She also denied telling the police that Landa had been with her all day on December 31 except for a few hours in the afternoon when he used the car to visit a friend.

Following Walter's testimony, Moore testified that when he stopped Walters on January 5, Walters said that the car belonged to Landa. Moore also testified that Walters told him that Landa went to see a friend in the afternoon of December 31.

After Moore's testimony, the court heard arguments from counsel outside the presence of the jury regarding the propriety of giving an alibi instruction. Landa requested an alibi instruction, arguing that it was permissible even though the criminal jury instruction guidelines do not recommend that it be given and even though he had not provided the court with a proposed jury instruction on alibi. The state opposed an alibi instruction, noting that Landa had not proposed a specific alibi instruction. The court then stated that in

the proposed eyewitness instructions submitted by Landa, there was a footnote referencing a federal case and that this case indicated that if a judge gives an alibi instruction, the judge should also instruct the jurors on the possible bias in the testimony by the defendant's family or friends. The court said that the alibi instruction is "one of those instructions that, I think, can cut both ways and is, potentially, dangerous." The court went on to say that because the instruction could be "dangerous," the jury instruction guideline committee recommended that no instruction on alibi be given. The court noted that a second reason why the committee recommended against giving an alibi instruction is that an alibi is proof that a necessary element of the state's case does not exist rather than a defense. The court then announced that it would follow the committee's recommendation and would not give an alibi instruction.

The court then brought the jurors back into the courtroom and instructed them on the law that they had to apply in Landa's case. With respect to the identification issue, the court told the jury that testimony had been introduced tending to identify Landa as the person observed at the time of the alleged offense. The court cautioned the jury to carefully evaluate that testimony and consider factors such as (1) the opportunity of the witness to see the person at the time of the alleged offense, (2) the length of time the person was in the witness's view, (3) the circumstances under which the witness viewed the person, including lighting conditions and the distance involved, (4) the stress the witness was under at the time the witness observed the person, and (5) the lapse of time between the alleged offense and the identification.

After the court instructed the jury, the state presented its closing argument. Landa then gave his closing argument and contended that he was somewhere else when the robbery occurred. Nevertheless, the jury found Landa guilty of first-degree aggravated robbery.

Landa appealed and argued, among other things, that (1) there was insufficient evidence to support the conviction because the eyewitness identifications were inaccurate and unreliable and (2) the district court abused its discretion in refusing to give an alibi instruction to the jury. In an unpublished opinion, the court of appeals rejected all of Landa's arguments and affirmed the conviction. With respect to the sufficiency of the evidence issue, the court concluded that the jury could have believed the state's witnesses and disbelieved all contrary evidence or alleged inconsistencies. Accordingly, the court held that there was sufficient evidence for the jury to determine that Landa robbed the Tavern. With respect to the alibi instruction, the court of appeals agreed with the district court that it is not always wise for judges to give requested alibi instructions because such instructions can be "dangerous." The court noted that the district court instructed the jury that the state has the burden of proving that Landa was guilty and that the state necessarily had to prove that Landa was actually at the Tavern on the day of the robbery and was not sleeping, as purported by Landa's alibi. The court also observed that Landa's attorney thoroughly presented Landa's alibi contention in his closing argument. For all these reasons, the court concluded that the district court did not abuse its discretion in declining to issue an alibi jury instruction.

We granted review to determine whether (1) the evidence was sufficient to support Landa's conviction and (2) whether the district court committed reversible er-

ror in denying Landa's request for an alibi instruction.

## I.

■ Landa first contends that the state failed to prove beyond a reasonable doubt that he was the person who robbed the Tavern because his conviction was based almost exclusively on inaccurate and uncorroborated eyewitness identification testimony. According to Landa, the accuracy of the eyewitnesses' identifications are suspect for several reasons. First, the robber's facial features were obscured because he was wearing an aviator cap that covered his head and much of his face. Second, Boyles observed the robber while she was being robbed, an extremely stressful situation that was not conducive to accurate identification. Third, there were disparities between certain physical characteristics of the robber identified by the witnesses and Landa's actual features. Some witnesses told the police that the robber had dark, wavy brown hair, and brown eyes. Poirer and Leis selected photos of men with these features and said that they resembled the robber. However, Landa has sandy-blond hair and blue eyes. Fourth, the fact that the police showed the full set of photo spreads to the witnesses rather than one photo at a time created a greater risk of misidentification.[1] Fifth, the possibility of misidentification was enhanced by the fact that Landa had previously been to the Tavern on several occasions prior to the robbery. Finally, Landa's alibi evidence created doubts about the accuracy of the witness identifications. In light of all of these problems

regarding the accuracy of the witness identifications, Landa argues that the state needed corroborating evidence to meet its burden of proof. According to Landa, however, the record is "devoid of any meaningful evidence corroborating the eyewitness testimony."

■ In reviewing a claim of insufficiency of the evidence in a criminal matter, this court determines whether a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Johnson,* 568 N.W.2d 426, 435 (Minn.1997) (citing *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978)). In doing so, the court views the evidence in the light most favorable to the verdict and assumes that the jury disbelieved any testimony in conflict with the result it reached. *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985). An identification need not be positive and certain to support a conviction—it is sufficient if a witness testifies that in his belief, opinion, and judgment the defendant is the one he saw commit the crime. *Johnson,* 568 N.W.2d at 435. Weighing the credibility of witnesses is the province of the jury. *Id.* The jury is free to accept part and reject part of a witness's testimony. *Id.* at 436. Inconsistencies or conflicts between one state witness and another do not necessarily constitute false testimony or the basis for reversal. *Daniels,* 361 N.W.2d at 826–27.

■ Eyewitness testimony, standing alone, can support a guilty verdict. *State v. Gluff,* 285 Minn. 148, 150–51, 172 N.W.2d 63, 64 (1969). Here, the jury could have reasonably believed the testi-

---

1. Although Landa argues that the manner in which the photo lineups were shown to the witnesses increased the chances of misidentification, he does not explain the nature of the misidentification. Nor does Landa argue that the photo lineups were so suggestive that they created a " 'very substantial likelihood of ir-

reparable misidentification' " in violation of the due process clause. *State v. Lindahl,* 309 N.W.2d 763, 765 (Minn.1981) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 107, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and citing *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

mony of the five witnesses who identified Landa as the robber. At Landa's trial, Boyles, Leis, and the Engeviks identified Landa as the robber. In addition, Poirer testified that the person he identified in the photo lineup was the robber and that Landa looked similar to the robber, but he could not be sure. Six days after the robbery, Boyles, Leis, Poirer, and Sharon Engevik identified Landa as the robber from the photo lineups and Jerald Engevik said that he believed that the robber was Landa or one of the fill-ins. Even excluding the identifications by Jerald Engevik and Poirer, the identifications of Landa as the robber by Sharon Engevik, Boyles, and Leis are consistent with their prior identifications of Landa in the photo lineups. Their identifications are also consistent with each other.

The jury could have accepted these witnesses' identification of Landa as the robber. They could have disbelieved contradictory testimony and arguments that it was difficult to identify the robber because the cap obscured most of the robber's facial features. The jury also could have disbelieved Landa's argument that Boyles' identification was suspect because she was under stress while she was being robbed. Finally, the jury could have disbelieved the testimony by Rolfer, Blahowski, and Walters regarding Landa's alibi and Blahowski's testimony that Landa had previously patronized the Tavern. *See State v. Gray*, 456 N.W.2d 251, 259–60 (Minn.1990) (explaining that the jury is not obligated to believe the defendant's story; rather, the court assumes that the jury believed the state's witnesses and no contrary evidence).

■ The jury, as the judge of credibility, is free to disregard part of a witness's testimony and accept another part. *Johnson*, 568 N.W.2d at 436. The jury could have believed testimony by Boyles, Leis,

and Sharon Engevik that Landa was the robber and disregarded evidence that these witnesses' descriptions of the robber varied from Landa's actual features. Each of these witnesses was subject to cross-examination and the inconsistencies and discrepancies in their testimony were presented to the jury.

Furthermore, there is corroborating evidence to support the reliability of these identifications. For example, it was not just one witness who identified Landa as the robber—several witnesses identified Landa as the robber. Second, there is some evidence indicating that Landa may have owned or at least had access to the car used as the getaway car by the robber at the time of the robbery. Third, Landa hid under a bed to avoid arrest.

We hold that the evidence was sufficient to support Landa's conviction. The robbery occurred in the afternoon. The person who committed the robbery purchased a beer from the bartender, sat at a table for some time before committing the robbery, and did not wear a mask. The robber drew attention to himself by wearing an unusual cap. The robber conversed briefly with the pull-tab operator while demanding the money. One patron witnessed the robber taking money from the pull-tab operator's drawers and yelled, "Call 911," thereby drawing attention to the robber before he fled the scene and giving other patrons the opportunity to observe the robber. Three witnesses identified Landa as the robber and those identifications were consistent with their prior identifications of Landa as the robber from the photo lineups. Also, these identifications were corroborated by additional evidence at trial. Accordingly, the jury could reasonably have concluded that Landa was guilty of robbing the Minnehaha Tavern on December 31, 1999.

## II.

■ Landa's second argument is that the district court erred in not giving an alibi instruction. Landa contends that the court should have given such an instruction because there was evidence supporting the alibi defense.

■ The refusal to give a requested jury instruction lies within the broad discretion of the district court and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). We have never prohibited alibi instructions. *See, e.g., State v. Kluck*, 299 Minn. 161, 169, 217 N.W.2d 202, 208 (1974). However, when the defendant objects to an alibi instruction, we have cautioned against giving certain alibi instructions and have recommended that such instructions, if given, should be "carefully phrased to make clear to the jury that defendant had only to create a reasonable doubt through the alibi defense." *Id. See also State v. Wilson*, 238 Minn. 447, 452, 57 N.W.2d 412, 415 (1953) (stating that alibi instruction, "if given at all, must be given with extreme care to the end that evidence tending to prove an alibi is given proper consideration by the jury").

■ Here, the question before us is whether the district court abused its discretion in refusing to give an alibi instruction when requested by the defendant. In evaluating this question, we examine the whole of the instructions and the context in which the decision was made. *Kluck*, 299 Minn. at 170, 217 N.W.2d at 208.

In Landa's case, the district court declined to provide an alibi instruction and followed the recommendation of CRIMJIG 7.09. Minnesota's jury instruction guidelines recommend against giving an alibi instruction because:

An alibi is not a defense. It is proof that a necessary element of the State's case does not exist. The burden of proof is on the State. In keeping with the general position that the instructions should not comment on the effect of particular evidence, the Committee recommends no instruction on alibi.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 7.09 cmt. (4th ed.1999). The district court denied Landa's request for an alibi instruction on the grounds that (1) an alibi instruction, coupled with an instruction regarding the possible bias of defendant's family and friends, might harm the defendant and (2) such an instruction was not necessary because an alibi argument posits that a necessary element of the state's case does not exist and that the state has not met its burden of proof.

We conclude that the district court did not abuse its discretion in declining Landa's request for an alibi instruction. First, the district court's concern that providing an alibi instruction and an instruction cautioning the jury regarding the possible bias of the defendant's friends and family was particularly compelling in light of the fact that all three witnesses who provided alibi testimony were Landa's friends. Second, Landa failed to provide the district court with an alibi instruction and therefore gave no guidance to the district court. *See State v. Wipper*, 512 N.W.2d 92, 94 (Minn.1994) (holding that the district court did not abuse its discretion in failing to instruct the jury that the alleged accomplice to the crime had invoked his Fifth Amendment privilege when the defendant requested that the jury should "somehow be informed as to the reason for" the witness's nonappearance and did not specifically request that the district court instruct the jury that it could not draw an

adverse inference against either side from the assertion of the privilege).[2]

 Landa asserts that he was entitled to an alibi instruction because alibi was his theory of defense. However, if evidence exists to support the defendant's theory of defense, a court is not required to give the requested instruction if the substance of the particular instruction is already contained in the court's instruction to the jury. *State v. Mitchell,* 577 N.W.2d 481, 493 (Minn.1998). In *Mitchell,* we held that the district court's instructions to the jury that (a) the state has the burden of proving all elements of the crime beyond a reasonable doubt and (b) the jury must find that the defendant caused the death of the victim and find that he acted with the intent to kill the victim, supported the conclusion that the district court did not abuse its discretion in declining to issue an instruction regarding the defendant's theory of the case. *Id.* at 493–94. In Landa's case, the court instructed the jury that the state had the burden of proof throughout the trial, Landa did not have to present any evidence, Landa never had any burden to prove his innocence, and the state had to prove each element of the alleged crime beyond a reasonable doubt. The court also told the jury that testimony had been introduced regarding the identity of the robber and cautioned the jury to carefully evaluate that testimony. Therefore, the district court did not abuse its discretion in failing to provide an alibi instruction, even though alibi was Landa's theory of defense.

In light of the reasons provided by the district court for denying Landa's request for an alibi instruction, coupled with the fact that Landa did not provide the court with an alibi instruction, we conclude that the district court did not abuse its discretion in declining to provide an alibi instruction at Landa's trial. This conclusion is further supported by the fact that defense counsel was free to and did argue the alibi evidentiary issue in his closing statement and that the court gave instructions on burden of proof and reasonable doubt, thereby providing some protection and leeway to insure that the jury gave the alibi issue proper consideration without invading the province of the jury.

Affirmed.

---

**2.** In his brief to this court, Landa submitted an alibi instruction based on the Ninth Circuit's model jury instructions. *See Ninth Circuit Manual of Model Jury Instructions, Criminal,* § 6.1 (2000). In his brief to the court of appeals, Landa proposed an alibi instruction based on the general federal jury instruction. *See* 1A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 19.07 (5th ed.2000). These alternate submissions do not negate the fact that Landa failed to submit an alibi instruction to the district court. In addition, these alternative submissions make it difficult to review Landa's claim on appeal. More importantly, the federal scheme is very different from our own. For example, federal judges are permitted to comment on the evidence, but we have cautioned our judges that instructions that single out a particular category of evidence should be avoided. *Compare Quercia v. United States,* 289 U.S. 466, 469–70, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) *with State v. Olson,* 482 N.W.2d 212, 215 (Minn. 1992). Because the federal scheme differs from our own, the fact that the federal system requires an alibi instruction under certain circumstances does not mean that such a rule is appropriate for Minnesota. Finally, we note that Landa did not provide written notice to the state that he intended to use the alibi defense. Although it is not an issue on appeal, written notice is mandated by Minn. R.Crim. P. 9.02, subd. 1(3)(a) and (c).