*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0262**

State of Minnesota,
Respondent,

vs.

Thomas Ardell Gentry,
Appellant.

**Filed March 9, 2015
Affirmed
Hudson, Judge**

St. Louis County District Court
File No. 69DU-CR-13-545

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Tara Kalar, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Hudson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges his conviction of second-degree sale of a controlled substance, claiming the circumstantial evidence was insufficient to sustain his conviction and that he was deprived of his right to a fair trial when the prosecutor made improper

statements during closing arguments. Because the evidence was sufficient to sustain appellant's conviction and the prosecutor did not commit misconduct, we affirm.

## FACTS

After a jury trial, appellant Thomas Ardell Gentry was convicted of second-degree sale of a controlled substance in violation of Minn. Stat. § 152.022, subd. 1 (2012). On February 7, 2013, law enforcement executed a search warrant at J.H.'s apartment in Duluth. Law enforcement paid a confidential informant (CI) to call individuals inside J.H.'s apartment and request "a dollar," i.e., $100, of cocaine. When the apartment door opened, officers rushed into the apartment. Investigator Eikam entered first and encountered J.H., whose hands were clenched in fists. He pushed J.H. into the apartment to allow the other officers to enter. Gentry was standing in the kitchen, located two to three feet off the entry, and "looked as if he was going to try to run out the door." Eikam pulled Gentry to the kitchen floor. After Gentry was "taken down to the ground," Eikam noticed "where [Gentry] was standing, there was a clear plastic baggie laying on the floor" and it "looked like [crack cocaine] had spilled out of the bag." Gentry had approximately $275 in cash although no crack cocaine was found on him.

Officer McShane, another officer who participated in executing the warrant, stated that "[i]t was almost like it was raining crack cocaine when we went into the apartment." He testified that after Gentry's struggle with officers he noticed a sandwich baggie "full of individually-wrapped pieces of crack cocaine" and "several, small individual packaged pieces of crack cocaine in baggie corners all over the kitchen floor" next to Gentry.

2

McShane handcuffed J.H. When J.H. opened his hands, he was holding two individually-wrapped pieces of crack cocaine, consistent with the CI's order for drugs. A third male, L.A., was sitting on a couch in the living room and a female, S.W., was sleeping in the bedroom. S.W., who was J.H.'s on-again/off-again girlfriend, also testified that she had not seen the crack cocaine on the kitchen floor prior to the execution of the search warrant. In addition, S.W. testified that "after awhile" she realized Gentry was selling drugs.

Cocaine was ultimately found in three areas: 147 individually-packaged rocks on the kitchen floor; a baggie filled with packaged rocks in the living room; and two packaged rocks in J.H.'s clenched fists.

After the warrant was executed, J.H. was interviewed at the police station. He said that Gentry would come up from the Twin Cities every couple weeks with cocaine, that Gentry would stay with him for approximately three days at a time, and that J.H. would make deliveries for Gentry. J.H. additionally testified that Gentry had been selling crack cocaine out of his apartment for some time and that in exchange Gentry would give him crack cocaine for his personal use. But J.H. later testified that the day of the search warrant was the first time he had ever been arrested so he was frightened and told the investigator at the police station "whatever [she] wanted to hear." On cross-examination, J.H. stated that he would like to recant the statements he made to the investigator because he was on crack cocaine at the time and had not slept in two to three days. But the investigator testified that at the time of the interview J.H. was cooperative and did not appear tired or impaired.

3

# DECISION

## I. Sufficiency of the Evidence

Gentry first argues that the circumstantial evidence presented at trial was insufficient to prove he possessed crack cocaine. In considering a sufficiency-of-the-evidence claim, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach their verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

"Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Bernhardt*, 684 N.W.2d at 477 n.11 (quotation omitted). But a conviction based on circumstantial evidence warrants heightened scrutiny. *Id.* at 477. Circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." *Id.* at n.11 (quotation omitted). Although circumstantial evidence warrants stricter scrutiny, it is given the same weight as direct evidence. *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). We "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010)

4

(quotations omitted). We must consider the evidence as a whole and not examine each piece in isolation. *Id.* at 332.

We undergo a two-step process in applying the circumstantial-evidence standard. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). "The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013) (quotation omitted); *see also State v. McCormick*, 835 N.W.2d 498, 505 n.2 (Minn. App. 2013) (noting that we evaluate the jury's likely determinations from their guilty verdict when reviewing the circumstances proved) *review denied* (Minn. Oct. 15, 2013). We assume "that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Moore*, 846 N.W.2d at 88.

"The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). A proffered rational alternative hypothesis must be supported by more than "mere conjecture" and must "point to evidence in the record that is consistent with a rational theory other than guilt." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008).

Gentry contends that the state failed to prove beyond a reasonable doubt that he had actual physical possession of the cocaine when the search warrant was executed. But Gentry was charged with, and the jury convicted him of, second-degree sale of a

controlled substance. "A person is guilty of controlled substance crime in the second degree if: (1) on one or more occasions within a 90-day period the person unlawfully sells one or more mixtures of a total weight of three grams or more containing cocaine. . . ." Minn. Stat. § 152.022, subd. 1(1). "Sell" is defined as "to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture" or "to possess with intent to perform" the same. Minn. Stat. § 152.01, subd. 15a(1), (3) (2012).[1] Because Gentry was convicted of sale, we review evidence supporting sale, and not merely possession.

Gentry claims that the only evidence that he controlled the cocaine was J.H.'s statement at J.H.'s own plea colloquy for drug-related charges that Gentry had been selling crack cocaine out of his apartment for some time. But Gentry misstates the record. At Gentry's trial, J.H. testified that (1) the drugs found on the kitchen floor in the apartment did not belong to J.H. and (2) that Gentry would bring the drugs into the apartment from the cities and sell them. J.H. also told law enforcement the same information shortly after the warrant was executed. This was direct evidence that Gentry

---

[1] Gentry alternatively argues that there was insufficient evidence to show that he constructively possessed cocaine for the purposes of possession with intent to sell. *See State v. Florine*, 303 Minn. 103, 104–05, 226 N.W.2d 609, 610 (1975) (holding constructive possession exists "where the inference is strong that the defendant at one time physically possessed the substance and did not abandon his possessory interest in the substance but rather continued to exercise dominion and control over it up to the time of the arrest."). But because the definition of "to sell" encompasses more than constructive possession, proof of constructive possession was not necessary for the conviction. *See State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002) (holding that "a jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt").

sold crack cocaine. Although J.H. later testified he would like to recant the statement to law enforcement because he was on crack cocaine at the time and had not slept in several days, the interviewing investigator testified J.H. was cooperative and did not appear confused, tired, or impaired. "The jury, as the judge of credibility, is free to disregard part of a witness's testimony and accept another part." *State v. Landa*, 642 N.W.2d 720, 726 (Minn. 2002). Thus, despite J.H.'s inconsistent trial testimony, assuming the jury believed J.H.'s statements made to law enforcement shortly after the execution of search warrant—when the investigator stated he was coherent—and his consistent statements at trial, J.H.'s testimony supports Gentry's conviction. Moreover, S.W., J.H.'s girlfriend, testified that "after awhile" she realized Gentry was selling drugs. This, too, was direct evidence of Gentry's guilt because it was based on S.W.'s personal knowledge and observations.

Gentry also argues the CI's failure to identify him contradicts evidence that Gentry sold drugs from J.H.'s apartment. At trial, the CI was unable to identify Gentry as someone who sold her cocaine. But she was unable to say he had not sold her cocaine because "at the time, the guy that [she] dealt with . . . had no hair" and Gentry had hair at trial. Contrary to Gentry's claim, the CI's straightforwardness in her inability to identify Gentry at trial arguably bolsters the credibility of her other statements.

Gentry incorrectly claims there is no other evidence to sustain his conviction. To the contrary, Officer Eikam testified that after Gentry was taken to the ground there was a "clear plastic baggie laying on the floor" and it "looked like [crack cocaine] had spilled out of the bag." Officer McShane testified that it was "almost like it was raining crack

7

cocaine" when they entered the apartment, indicating that the crack cocaine spilled when the officers entered, not that the drugs were previously on the kitchen floor. S.W. also stated that she had not seen the crack cocaine on the floor prior to the execution of the search warrant. The cocaine was also packaged in individual baggie corners, strongly suggesting it was wrapped for sale. In addition, Gentry had a significant amount of cash on him.

Considering the entirety of the circumstances and resolving factual disputes in favor of the jury's verdict, we conclude that the state met its burden of proving Gentry's guilt beyond a reasonable doubt. Multiple witnesses saw the crack cocaine on the floor only after Gentry was taken to the ground. The testimony indicates the cocaine spilled upon the ground, consistent with Gentry's struggle with the officers. Other circumstances, including the cash found on Gentry and S.W.'s testimony that she believed he was selling drugs out of the apartment, are consistent with his sales conviction.

To the extent the state relies on circumstantial evidence to secure Gentry's conviction, we easily conclude that the circumstances proved regarding the spilled cocaine are consistent with guilt and inconsistent with any other rational hypothesis. *Silvernail*, 831 N.W.2d at 599. While Gentry asserts that the jury could have inferred numerous explanations for how the cocaine ended up on the floor near him, he does not provide any plausible explanations.

Given that three witnesses testified they did not see the drugs on the floor prior to Gentry being "taken down," it is unlikely the drugs were on the floor prior to the

8

execution of the search warrant. The drugs were found in the immediate proximity of Gentry, and Officer McShane testified that Gentry was uncooperative, struggled with the officers, and that it was "raining" cocaine. This is consistent with the rational hypothesis that the baggie containing packaged drugs spilled in the kitchen during Gentry's struggle with the officers.

Because the cocaine apparently spilled during the execution of the search warrant, the only other reasonable inference is that the cocaine was spilled by someone else in the apartment. But there were only three other people in the apartment when the officers entered: J.H., L.A., and S.W. J.H. was handcuffed shortly after the officers' entry. J.H.'s fists were clenched and when they opened, he was holding only two small rocks of cocaine, consistent with him exiting to make a drug delivery to the CI. L.A. was seated on the couch away from where the spilled drugs were found, and there is no testimony that he struggled with law enforcement or was in proximity of the kitchen. S.W. was in the back bedroom when the search warrant was executed and not in proximity to the kitchen. We therefore conclude that the only reasonable inference and rational hypothesis is that of Gentry's guilt.

## II. Prosecutorial Misconduct

Gentry claims that he was deprived of a fair trial because, during closing arguments, the prosecutor made prejudicial statements, to which Gentry did not object, and improperly vouched for the CI.

We will reverse a conviction due to prosecutorial misconduct "only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to

9

a fair trial." *State v. Swanson*, 707 N.W.2d 645, 658 (Minn. 2006). When determining whether there was prosecutorial misconduct during a closing argument, we consider "the closing argument as a whole rather than focus[ing] on particular phrases or remarks that may be taken out of context or given undue prominence." *State v. Jackson*, 714 N.W.2d 681, 694 (Minn. 2006) (quotations omitted).

The prosecutor "has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998). The prosecutor has "considerable latitude" in making a closing argument and need not make a colorless argument. *Id.*

Allegations of unobjected-to prosecutorial misconduct are reviewed under a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). The test examines three prongs: (1) whether there was an error; (2) whether the error was plain; and (3) whether the plain error affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the three prongs are satisfied, we then assess "whether [we] should address the error to ensure the fairness and the integrity of the judicial proceedings." *Id.* The burden of proof is on appellant to satisfy the first two prongs, and the burden then shifts to the state to prove that the error did not affect the defendant's substantial rights. *Carridine*, 812 N.W.2d at 146.

Gentry argues that the prosecutor committed misconduct when he made an improper character reference by stating that J.H. was "not the type of person who is going

to be selling thousands and thousands of dollars of crack cocaine from his apartment. It's consistent with someone who is allowing other people to do it to support his [drug] habit." Instead of objecting, Gentry's defense counsel opened his closing argument by stating:

> We heard [the prosecutor] say that [J.H.] was not the type of person who would be selling thousands of dollars worth of crack cocaine. The implication being Mr. Gentry is the type of person to be selling thousands of dollars of crack cocaine. There is no evidence before you as to what type of person sells thousands of dollars of crack cocaine. And so whatever you do in your deliberations, I hope it doesn't come up that Mr. Gentry is the "type" of person to be doing this.

In rebuttal, the prosecutor admitted that he should not have used the phrase "type of person" and apologized to the jury for the statement.

"Character attacks are improper comments during a prosecutor's closing argument." *State v. Atkins*, 543 N.W.2d 642, 649 (Minn. 1996); *see also State v. Washington*, 521 N.W.2d 35, 39–40 (Minn. 1994) (holding that references to a defendant's nature were improper character comments). Although the prosecutor did not directly comment on Gentry's character and clarified that he was attempting to show that J.H. was not responsible for the cocaine, we conclude his character comment was an error.

The next step is to determine if the error was plain. An error is plain if it is "clear or obvious" and "is (or should be) apparent to the trial court." *State v. Kelley*, 855 N.W.2d 269, 286 (Minn. 2014). Gentry claims that the error was plain because "the court has reiterated that use of concepts and terms such as . . . different 'worlds[]' and 'these

11

people' should be avoided." *See State v. Paul*, 716 N.W.2d 329, 334 (Minn. 2006). In *Paul*, the prosecutor made reference to the "world" in which several witnesses lived and called the witnesses "these people." *Id.* The supreme court concluded that the state's unobjected-to remarks did not constitute misconduct and therefore were not plain error because the remarks were brief; not demeaning; did not mention a particular community; summarized evidence; were intended to address inconsistencies and lack of cooperation by witnesses; and were not intended to appeal to the passions of the jury. *Id.* at 339.

After reviewing the record as a whole, we conclude the prosecutor's reference to the "type of person" does not constitute plain error. First, like the remarks in *Paul*, the statement was brief, and, as the prosecutor clarified, was not intended to address J.H.'s character. Instead it was intended to show that the evidence demonstrated J.H. was not responsible for the drugs, partially because his apartment did not contain the typical supplies for packaging and selling the large quantity of seized drugs. Second, while the judge did not give a curative instruction, both Gentry's attorney and the prosecutor informed the jury that character was not in question.

But even if the error were plain, we conclude it did not affect Gentry's substantial rights. We consider factors including the strength of the evidence against the defendant, the pervasiveness of the misconduct, and whether the defendant had an opportunity or made efforts to rebut the improper conduct. *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007). Here, the evidence is sufficient to sustain Gentry's sale conviction. And in the context of the entire trial, the misconduct was not pervasive: the prosecutor made one improper statement about a witness that did not "inflame the jury's passion" or compare

12

the "world" of the witness to that of the jury. Additionally, defense counsel used the opportunity during his closing statement to remind the jury that Gentry's character was not on trial.

Since Gentry's substantial rights were not affected by the error, we need not address whether to correct the error to ensure the fairness and integrity of the proceedings.

Finally, Gentry asserts that the prosecutor improperly vouched for the CI. "A prosecutor may not personally endorse the credibility of a witness or impliedly guarantee a witness's truthfulness." *Jackson*, 714 N.W.2d at 696; *see also Swanson*, 707 N.W.2d at 656 (holding that the statement "the state believes [the witness] is very believable" is impermissible vouching on its face). But the state may argue that a particular witness was or was not credible. *State v. Fields*, 730 N.W.2d 777, 785 (Minn. 2007); *see, e.g., State v. Smith*, 825 N.W.2d 131, 139 (Minn. App. 2012) (holding that the prosecutor's brief comments that a witness was "very sincere" and "very frank in his testimony" were arguments regarding credibility and therefore were not improper vouching), *review denied* (Minn. Mar. 19, 2013).

A prosecutor has "a right to analyze the evidence and vigorously argue that the state's witnesses were worthy of credibility whereas defendant and his witnesses were not." *State v. Googins*, 255 N.W.2d 805, 806 (Minn. 1977). As long as the prosecutor does not intentionally misstate the evidence or mislead the jury as to inferences it may draw, he may argue all reasonable inferences from the evidence in the record. *State v. McCray*, 753 N.W.2d 746, 753–54 (Minn. 2008).

Gentry claims that when the prosecutor stated what B.W. "said is corroborated by other facts that turned out during the investigation in the case," he improperly vouched for her believability because the evidence was insufficient without the prosecutor's statement. Specifically, during closing the prosecutor argued that: the process B.W. explained to law enforcement about purchasing crack from J.H.'s apartment was consistent with what occurred during the warrant execution process; B.W. was frank about a prior conviction and why she was working with the police; and B.W. was a credible witness. Gentry does not identify what evidence the prosecutor misstated or that the prosecutor did anything other than analyze the evidence to demonstrate it was consistent with B.W.'s testimony. *See Googins*, 255 N.W.2d at 806. We thus conclude the prosecutor did not improperly vouch for B.W. when he stated that her testimony was corroborated by other facts in the investigation.

**Affirmed.**

14